# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA

NILSON BARAHONA, *et al.*,

     *Plaintiffs,*

    v.

LASALLE MANAGEMENT COMPANY, LLC D/B/A LASALLE CORRECTIONS, *et al.*,

     *Defendants.*

**CLASS ACTION**

Jury Trial Demanded

No. 7:23-cv-00024-HL

## PLAINTIFFS' OPPOSITION TO DEFENDANTS LASALLE MANAGEMENT COMPANY, LLC AND LASALLE CORRECTIONS, LLC'S RULE 12(B) MOTION TO DISMISS

Plaintiffs Nilson Barahona, Nikolas Gazetas, and Omar Isaias Tavir Garcia, on behalf of themselves and others similarly situated (collectively "Plaintiffs"), by and through their undersigned counsel, submit this Opposition to Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 30, the "FAC") on behalf of LaSalle Management Company, L.L.C. ("LaSalle Management") and LaSalle Corrections, LLC's ("LaSalle Corrections," and together the "Moving Defendants") Pursuant to Rule 12(b)(2) and Rule 12(b)(6) (ECF. No. 37, "Motion," and Memorandum in Support (ECF. No. 37-1, "Memo.")).  For the reasons set forth herein, the Motion should be denied in its entirety.

## I.    INTRODUCTION

The Moving Defendants seek dismissal from this action based on the faulty premise that they have absolutely no contacts with Georgia. The Motion, however, misrepresents the Moving Defendants' extensive relationship with both the Irwin County Detention Center in Ocilla, Georgia ("Irwin") and the State of Georgia. The Moving Defendants' Motion strains credulity as it is contradicted by overwhelming public information and representations, including statements made

under oath by the Moving Defendants' own executives, that readily evidence not only the interrelatedness of LaSalle Management with LaSalle Corrections, but the Moving Defendants' relationship to the Irwin facility and all other Defendants named. Those public representations and other publicly available information, including reports by federal agencies concerning Irwin, plainly evidence that the Moving Defendants own Irwin and are inextricably involved in the facility's management and operation. Moreover, the Moving Defendants are further connected to Georgia as parties to the federal contract to detain immigrants at Irwin, are employers of Georgian residents, and are entities that further profit from goods sold to detained persons from the Irwin commissary. Personal jurisdiction thus exists over both Moving Defendants pursuant to Georgia's long-arm statute and a minimum contacts analysis.  The Motion should be denied.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This action centers on the unlawful conduct of Defendants LaSalle Management, LaSalle Corrections, LaSalle Southeast, LLC ("LaSalle Southeast"), CGL Irwin Properties, LLC ("CGL Irwin"), and CGL/LaSalle Irwin Properties, LLC ("CGL LaSalle," and collectively "Defendants")[1] illegal labor and detention profiteering practices which unlawfully coerced Plaintiffs to work for nearly free and punish them if they did not work. FAC ¶¶ 3-7; 30-90. Defendants together comprise a single privately-held, for-profit business that own Irwin and operated the facility pursuant to an Intergovernmental Service Agreement ("IGSA") with U.S. Immigration and Customs Enforcement ("ICE"). *Id*. ¶¶ 1, 3, 8, 21-28, 35. Pursuant to the IGSA, the federal government paid Defendants a fixed bed-day rate of at least $60.50 per detained immigrant housed at Irwin, permitting Defendants to house between 600-1200 detained immigrants per day. *Id*. at. ¶¶ 8, 28, 34. The fixed bed-day rate was intended to cover Defendants' costs related to housing, clothing, feeding, and caring for detained

---

[1] Defendant Irwin County Detention Center, LLC has been dismissed by stipulation of the parties.  *See* ECF No. 44.

immigrants at Irwin plus up to an additional fifteen percent profit margin. *Id*. The Moving Defendants further profited from the sale of goods to persons detained at Irwin who were forced to purchase critical items at the Irwin commissary. *Id*. at. ¶¶ 73-75. In or around May 2021, the federal government announced that it was terminating its IGSA with Defendants due to significant allegations, verified by private and congressional investigations, of Defendants' significant and decades-long abuse and harm of detained immigrants at Irwin; the first termination of any private detention contractor agreement in a decade. *Id*. at ¶¶ 1, 29.

Plaintiffs, former civilly detained immigrants, commenced this action on March 10, 2023. *See* ECF. No. 1 (the "Complaint"). On May 8, 2023, Defendants filed three separate Motions to Dismiss Plaintiffs' Complaint (*see* ECF. Nos. 16, 17, 18), including a similar motion by the instant Moving Defendants pursuant to F.R.C.P. 12(b)(2) and 12(b)(6) contesting this Court's jurisdiction over them. *See* ECF. Nos. 16 & 16-1. In support of their prior May 8, 2023 motion, the Moving Defendants submitted an affidavit on behalf of Sharon Bennett, Controller of LaSalle Management Company, LLC, attesting to the corporate responsibilities and contractual roles of the Moving Defendants (*See* Doc. 16-2, "Bennett Affidavit"), and a redacted copy of the Operation, Management, and Maintenance Agreement (*See* Doc. 16-3, "OMMA") for the Irwin facility, between the County of Irwin, Georgia, LaSalle Southeast, and CGL LaSalle. *See* ECF. No. 16-3.

In response, on June 16, 2023, Plaintiffs filed their FAC, the operative complaint in this action, asserting claims pursuant to the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1590, 1594(a), Georgia common law for unjust enrichment, and for violations of international law and customary international law prohibiting coerced labor pursuant to the Alien Tort Statute, 28 U.S.C. § 1350. Compl. ¶¶ 122-192. On July 21, 2023, the Moving Defendants filed the instant Motion, which again contests this Court's jurisdiction over them. *See* Motion. In support of the Motion, the Moving

Defendants again annexed the Bennett Affidavit and a redacted copy of the OMMA. *See* ECF. Nos. 37-2 & 37-3. In addition to this Motion, Defendants also filed three additional motions to dismiss, including, as relevant to the instant Motion, a renewed Motion to Dismiss pursuant to F.R.C.P. 12(b)(2) and 12(b)(6) filed by LaSalle Southeast. *See* ECF. No. 36 (the "LaSalle SE MTD"). The LaSalle SE MTD is joined by the Moving Defendants and other Defendants. *See* Motion ¶ 15; Memo. at 19. As the LaSalle SE MTD is joined by the Moving Defendants, Plaintiffs incorporate by reference their response in opposition to the LaSalle SE MTD as if stated in full herein.  *See* ECF No. 45.

## III.    STATEMENT OF FACTS ESTABLISHING JURISDICTION

### A.    DEFENDANTS COMPRISE A SINGLE BUSINESS WHICH OWNS AND OPERATES IRWIN

While conceding that Defendants LaSalle Southeast, CGL Irwin, and CGL LaSalle are proper parties to this action, the Moving Defendants allege they are "not legally related in any manner" to LaSalle Southeast or Irwin. Memo. at 5-6. The Moving Defendants attempt to distance themselves from all remaining Defendants and Irwin is undermined by facts evidencing their significant interconnectedness. The Moving Defendants are part of the McConnell family umbrella of companies, encompassed under WMC Enterprises, LLC, a private company founded by William Keener McConnell in 1999 as McConnell Correctional Center, LLC.[2] The company changed its name in 2006 to WMC Enterprises and continues to include LaSalle Management, LaSalle Corrections, and the affiliated prisons and correctional centers, including Irwin, owned and operated by the collective business.[3] The Defendants share common business addresses, registered agents, and officers. FAC ¶¶

---

[2]*See* Louisiana Sec. of State, *Lasalle Management Company, L.L.C.*, https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=517077 (last accessed Sept. 6, 2023); Louisiana Sec. of State, *McConnell Correctional Center, L.L.C.*, https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=543926 _4262C23DDC  (last accessed Sept. 6, 2023).

[3] Tomas Well, *A peek into LaSalle Corrections background and how its principals will go to great lengths to protect investment*, **LOUISIANA VOICE** (Nov. 25, 2020), *available at*

21-26. The majority of day-to-day operations of prison management at Irwin are undertaken by LaSalle Corrections which is organized under LaSalle Management.[4]

Moreover, high-ranking officials of the collective LaSalle brand have made public representations on behalf of all LaSalle entities named as Defendants in this action and their relationship to Irwin. For example, in 2022, the U.S. Senate held hearings related to a congressional investigation into allegations of abuse and harm of detained immigrants at Irwin, which congressional investigation culminated in the termination of the federal government's IGSA with Defendants.[5] FAC ¶¶ 1-2, 29, 91-111. During one such hearing, Dr. Pamela Hearn testified under oath before Congress that she "serve[s] as the Medical Director for LaSalle Corrections and ha[s] overseen medical care at the Irwin County Detention Center in Georgia since January 2020,"[6] and provided an overview of the LaSalle business enterprise as follows:

> I would like to begin by telling you who we are. LaSalle is a family-owned business, headquartered in Ruston, Louisiana, which provides detention and corrections industry solutions to law enforcement agencies. LaSalle was founded in 1997 . . . [and] has since grown to manage fifteen facilities in Louisiana, Texas, Arizona, and Georgia. LaSalle partners with the localities it serves to provide facility management and operation services . . . LaSalle is led by a Corporate Management team, each member of which has extensive professional experience in detention administration, criminal justice, and/or public service. Guided by this leadership, . . . LaSalle commits to operating its facilities and programs with the highest levels of decency and humanity, while providing safe, secure, and humane surroundings for our staff, those in our custody and care, and the communities in which we operate, such as Irwin County, Georgia.[7]

---

https://louisianavoice.com/2020/11/25/a-peek-into-lasalle-corrections-background-and-how-its-principals-will-go-to-great-lengths-to-protect-investment/.

[4] Medical Mistreatment of Women in Ice Detention – Hearing before the Permanent Subcommittee on Investigations of the Comm. on Homeland Sec. and Governmental Affairs U.S. Senate. 2nd Session (2020), LaSalle Opening Statement from Dr. Hearn (Nov. 15, 2022), ¶¶ 1-2, https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/Hearn%20Testimony.pdf (last visited Sept. 7, 2023) (hereinafter "Hearn Testimony").

[5] *Id.* at 1.

[6] *Id.* at 1.

[7] *Id.* at 1-2.

Dr. Hearn also testified under oath that Irwin is "one of the facilities LaSalle operates" and "is managed by an *organizational team*" referencing the Moving Defendants.[8] Dr. Hearn also discusses the IGSA for Irwin, and states "ICE did not grant *LaSalle* any ability to decide . . ." and "ICE contractually limited *LaSalle* to . . .," evidencing the Moving Defendants' relationship to the IGSA for Irwin.[9]

Similarly, in July 2020, a Congressional hearing was held regarding various ICE contractors' responses to the Covid-19 Pandemic.[10] During same, Executive Director of LaSalle Corrections, Rodney Cooper, testified under oath that:

> LaSalle Corrections is an established developer and operator of correctional centers throughout the United States. LaSalle Corrections has been providing corrections industry solutions to . . . Federal agencies . . . for decades. Our range of facility solutions include . . . inmate and detainee services that cover . . . immigration . . . As a full-service corrections and immigration detention management provider, LaSalle Corrections specializes in the management of prisons, jails, and detention facilities, as well as inmate and detainee transportation services.[11]

Mr. Cooper also testified that the Moving Defendants set uniform policies and procedures for *all* LaSalle owned detention facilities, and further states "LaSalle Corrections maintains operating responsibility for the following facilities . . . Irwin County Detention Center."[12] LaSalle's own website lists Mr. Cooper as its Executive Director and states he "monitors general operations at *all* facilities."[13]

---

[8] *Id.* at 2 (emphasis added).

[9] *Id.* at 4 (emphasis added).

[10] Oversight of ICE Detention Facilities: Examining ICE Contractors' Response to Covid-19, Hearing before the Subcommittee on Border Security, Facilitation, and Operations of the Committee on Homeland Security, House of Representatives, 116th Cong., 54-85, (2020), (hereinafter "R. Cooper Congressional Statement) *available at* https://www.congress.gov/116/chrg/CHRG-116hhrg43192/CHRG-116hhrg43192.pdf.

[11] *Id*. at 54.

[12] *Id*. at 54-56, 130-133; *Id.* at 134 (Responses to Questions from Chairwoman Kathleen M. Rice for Rodney Cooper at Answer to Question 2).

[13] *See* LaSalle Corrections Website, "About Us - Corporate Management," https://lasallecorrections.com/management/ (last visited Sept. 6, 2023) (emphasis added).

Collectively, these public representations plainly evidence that all Defendants named in this action, including the Moving Defendants, are part and parcel of a single, for-profit private prison operation that collectively own and operate a number of correctional facilities in the U.S., including Irwin. These public representations are made under oath by the Moving Defendants' executive level employees, and further confirm the FAC's well-pled allegations that LaSalle Management "does business as" LaSalle Corrections, that the Moving Defendants exercise leadership and control over LaSalle's multiple subsidiary entities established for individual detention facilities, like LaSalle Southeast and the other named Defendants, and that the Moving Defendants set policies and procedures for all LaSalle-owned detention centers, including Irwin. FAC ¶¶ 21-29.

**B.**    **DEFENDANTS HAVE NOT CONTESTED THIS COURT'S JURISDICTION IN OTHER MATTERS**

Both Moving Defendants have been named as defendants in other lawsuits, including in Georgia and related to Irwin, in which actions they did *not* contest either their relationship to each other or this Court's exercise of jurisdiction over them. *See, e.g.*, *Moncus v. Lasalle Mgmt. Co., LLC*, No. 7:19-CV-75 (HL), 2020 WL 1679695 (M.D. Ga. Apr. 6, 2020); *see also Houser v. LaSalle Mgmt. Co., LLC*, No. 5:16-CV-00129-RWS, 2019 WL 13212319 (E.D. Tex. Dec. 4, 2019).

In *Moncus*, plaintiff therein brought suit related to his wrongful incarceration at Irwin and named the following LaSalle entities as defendants: LaSalle Management Company, LLC, d/b/a LaSalle Corrections; LaSalle Southeast, LLC; CGL/LaSalle Irwin Properties, LLC; and CGL Irwin Properties, LLC (the "*Moncus* LaSalle Defendants"). *See Moncus*, 2020 WL 1679695 at *1 & n.1. Contrary to the Moving Defendants' assertions (Memo. pp. 17-18), the *Moncus* LaSalle Defendants were collectively referred to as the "LaSalle Defendants" throughout the litigation with no objection by the Moving Defendants as to personal jurisdiction in the Middle District of Georgia.  *See, e.g.*, *Moncus v. LaSalle Management Co., LLC*, C.A. No. 7:19-cv-75 (HL) (M.D. Ga., 2019) at ECF No.

94, at 1 ("The LaSalle Defendants' Motion for Summary Judgment" submitted by LaSalle Management, LaSalle Corrections, LaSalle Southeast, CGL Irwin, and Defendant Phil Bickman) (the *Moncus* docket will hereinafter be referenced as the "*Moncus* Docket"). Moreover, in the *Moncus* litigation, similar to the instant action, the *Moncus* LaSalle Defendants were collectively represented by one attorney.[14] In the same litigation, Robert David Paulk, Irwin's jail administrator and corporate designee on behalf of the *Moncus* LaSalle Defendants, testified under oath that Irwin is managed by LaSalle Corrections who is the operating agent of the Irwin facility and who distributes tax documents, including W-2 forms, to Irwin facility employees, including to the jail's warden and administrator.[15]

Similarly, in *Houser*, plaintiff brought a wrongful death action related to the death of an inmate at Bi-State Jail in Texarkana, Texas. *Houser,* 2019 WL 13212319, at *1. In *Houser*, Plaintiff named LaSalle Management Company, LLC, LaSalle Corrections, LLC, and WMC Enterprises, LLC as defendants, and none contested their relationship to each other, to the Texas detention facility, or to the Court's exercise of jurisdiction over them. *See generally Houser v. LaSalle Mgmt. Co., LLC*, Docket No. 5:16-CV-00129-RWS, (E.D. Tex.); *see also Houser,* 2019 WL 13212319, at *2 (granting in part plaintiffs' motion to compel related to, in relevant part, critical incident reports, serious incident

---

[14] *Moncus* Docket, at ECF. No. 88, Transcript of Deposition of Thomas Pujadas (May 20, 2020), at 56:18-57:4.

[15] *See id.* at ECF. No. 114, Transcript of Deposition of Robert David Paulk (June 25, 2020) (hereinafter "Paulk Deposition") at 8:12-9:15 (testifying that the Irwin facility is "managed by LaSalle Corrections," that Paulk's employee tax documents come from "LaSalle Corrections, LLC" and that he does not receive any tax documents from LaSalle Southeast or the Irwin County Sheriff); *Id.* at 14:12-17:25 (explaining that "LaSalle Corrections is the operating agent of th[e Irwin] facility onsite," which reports to LaSalle Southeast, that "CGL/LaSalle is a joint venture for property concerns," related to Irwin, and in discussing the OMMA states that LaSalle Corrections is "the operating agency" for Irwin); *Id.* at 84:16-85:5 (summarizing prior testimony regarding the relationship between Irwin, CGL/Irwin, LaSalle Southeast, LaSalle Management and LaSalle Corrections); *Id.* at 48:12-21 (Paulk, as jail administrator of Irwin, testifies that his supervisor is James McCormick "who works for one of the LaSalle entities," who "manages a number of jails" including Irwin, and that Mr. McCormick's office is located in Louisiana).

reviews, and organizational charges from "LaSalle facilities" across Texas). These prior litigations involving the Moving Defendants contradict their assertions that neither has engaged in "any conduct whatsoever in or relating to the state of Georgia, or engaged in any conduct in or relating to any state other than Louisiana." Bennett Affidavit, ¶ 12; Memo. at 4-11.

**C.    LASALLE CORRECTIONS IS MORE THAN A "TRADE NAME" AND OPERATES IN GEORGIA**

The same information as discussed above (*see* Section III.A-B) similarly contradicts the Moving Defendants' assertions that LaSalle Corrections is "an unused entity" and that "LaSalle Corrections" is simply a "trade name utilized by multiple LaSalle-branded entities throughout the country." Memo. at 6-7, 10-11.

Further evidence supports this fact. A January 3, 2022 Report from the U.S. Department of Homeland Security, Office of Inspector General, entitled "Medical Processes and Communication Protocols Need Improvement at Irwin County Detention Center" (the "OIG Report")[16] states that Irwin is "owned by LaSalle Corrections," that "ICE terminated the contract *with LaSalle Corrections* effective October 7, 2021," and that LaSalle Corrections sets overarching policies and procedures for all of its facilities, including Irwin.[17] In addition, as discussed *supra*, various public representations have been made by LaSalle executives that "LaSalle Corrections maintains operating responsibility" for Irwin.[18] In fact, it was reported that in 2020 alone, LaSalle Corrections had estimated sales of $34 million.[19]

---

[16] *Office of Inspector General*, Medical Processes and Communication Protocols Need Improvement at Irwin County Detention Center, *available at* https://www.oig.dhs.gov/sites/default/files/assets/2022-01/OIG-22-14-Jan22.pdf (Jan. 3, 2022).

[17] *Id.* at 3-4 (emphasis added); *Id.* at 8 ("Irwin did not have "facility-specific policies and procedures" because "it relied on overarching policies and procedures established by the facility contractor, LaSalle Corrections.").

[18] R. Cooper Congressional Statement, *supra* n. 10, at 134.

[19] Tomas Well, *LaSalle Corrections, already pounded in several lawsuits, hit by one $400k settlement and another lawsuit so far this year*, **LOUISIANA VOICE** (Feb. 7, 2021), *available at*

Moreover, LaSalle Corrections' website, which is a public domain accessible in all fifty states, including Georgia, corroborates the company's active, operational presence in Georgia.[20]  The website lists the various LaSalle executives who oversee facility operations and development, including Mr. Cooper himself, who, per his LinkedIn, "monitors general operations at all facilities[,]"and has "direction and oversight of LaSalle managed facilities in Texas *and Georgia*."[21]  The LaSalle Corrections website highlights Defendants' Director of Operations, Robert Jay Eason, "who also monitors general operations of all facility operations outside of Louisiana."[22] Moreover, the LaSalle Corrections website advertises its reach as the following:

> LaSalle Corrections and its affiliates currently manage 18 correctional facilities in Louisiana, Texas and Georgia with a total inmate capacity of over 13,000 and lease one facility to a law enforcement agency.  We pursue opportunities throughout the United States.[23]

The website additionally advertises the following services of LaSalle Corrections:

> Our experienced management and distinguished security team is dedicated to providing professional and efficient services to all of our partners. Our team currently consists of over 1,250 employees serving at all of our locations.[24]

While touting its reach and services to all fifty states, including Georgia, the LaSalle Corrections' website provides "Career Opportunities" at all LaSalle facilities, listing employment opportunities with

---

https://louisianavoice.com/2021/02/07/lasalle-corrections-already-pounded-in-several-lawsuits-hit-by-one-400k-settlement-and-another-lawsuit-so-far-this-year/ (last visited Sept. 6, 2023).

[20] LaSalle Corrections, https://lasallecorrections.com/ (last visited Sept. 6, 2023).

[21] *See* LaSalle Website – About Us: Corporate Management, *supra* n. 13; Rodney Cooper, LinkedIn, https://www.linkedin.com/in/rodney-cooper-b591b470 (last visited Aug. 30, 2023) (hereinafter "Cooper LinkedIn").

[22] *See* LaSalle Website – About Us: Corporate Management, *supra* n. 13.

[23] *See* LaSalle Website, *supra* n. 20.

[24] LaSalle Corrections, WHAT WE DO, https://lasallecorrections.com/what-we-do/ (last visited Sept. 6, 2023).

LaSalle Corrections.[25]  Given the foregoing, Defendants' assertions that LaSalle Corrections is only a "legal entity" or a "trade name" with no connection to Georgia, "does not own, operate, or run any correctional facilities in Georgia," or "does not advertise, market, or direct any promotion towards residents of the state of Georgia," are plainly inaccurate.  *Cf.* Memo. at 11; Bennett Affidavit, ¶¶ 8,11.

### D.   LASALLE MANAGEMENT COMPANY OPERATES IN GEORGIA

The Moving Defendants similarly argue that LaSalle Management, like LaSalle Corrections, "does not own, operate, or run any correctional facilities in Georgia" and "does not advertise, market, or direct any promotion towards residents of the state of Georgia." Memo. at 8. In support of its argument, the Moving Defendants ***admit*** LaSalle Management's direct connection to Irwin as "an entity that contracts with" LaSalle Southeast "to provide accounting and support services." Memo. at 8, 9; Bennett Affidavit, ¶ 27. Despite this admission, LaSalle Management argues that because these services are provided virtually, and because it only has a "contractual role" with LaSalle Southeast, LaSalle Management "does not possess knowledge of or participate in any ventures relating to [Irwin's] Voluntary Work Program." Motion ¶9; Memo. at 9; *see also* Bennett Affidavit, ¶ 37. The Moving Defendants' argument that LaSalle Management "does not now and never has operated any detention center in Georgia or performed other business in Georgia," or that "no owner, officer, director, member, manager, agent, employee, or representative of [LaSalle Management] has provided oversight for, provided support for, developed, enforced, benefitted from, or in any way participated in the Volunteer Work Program at" Irwin are also untrue. Memo. at 9. Collectively, all of these assertions are contradicted because, as discussed *supra*, LaSalle Management and LaSalle Corrections own, manage, and operate the Irwin facility.  *See* Section III.A-B, *supra*; *see also* FAC ¶ 7.

---

[25] LaSalle Corrections, **CAREERS**, https://lasallecorrections.com/careers/ (last visited Sept. 6, 2023).

In fact, LaSalle Management submitted a report to the Arkansas State Legislature highlighting its role in the management and operation of detention facilities, including Irwin, and holding itself out as synonymous with "LaSalle Corrections."[26] In this report, LaSalle Management states that it "has provided corrections industry solutions and services to local, state and federal law enforcement agencies" and that its "range of solutions include facility design and development, financing, construction, security, operations management, along with a wide array of inmate programs and services."[27] Additionally, the report lists Irwin as one of the facilities it "currently manages and/or owns" and, in particular, advertises that it offers a variety of inmate programs in its facilities, including the ability to "earn additional income."[28] The report also lists LaSalle Management's management team, which includes several members of the McConnell family (and WMC Enterprises, LLC), Rodney Cooper, and other directors who are also executives of LaSalle Corrections.[29] Thus, Defendants' portrayal of LaSalle Management as merely a contractual partner providing accounting services is a misstatement of the significant role it plays with respect to the larger LaSalle enterprise, the Irwin facility, and its relationship to all remaining named Defendants.[30]

## IV.    STANDARD OF REVIEW

Courts in the Eleventh Circuit apply a two-part analysis to determine whether personal jurisdiction exists over a nonresident. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  First,

---

[26] Joint House and Senate Meeting Before the State Leg. 89th Gen. Assembly. 2nd Extraordinary Session (Ark 2014), Agenda Attachment Exhibit B, https://www.arkleg.state.ar.us/Home/FTPDocument?path=%2FAssembly%2FMeeting+Attachments%2F500%2FI12780%2FExhibitB-LaSalle+Corrections.pdf (last visited Sept. 6, 2023).
[27] *Id*.
[28] *Id*. at 3, 4.
[29] *Id*. at 2.
[30] Moreover, according to a 2020 Dun & Bradstreet report, LaSalle Management had 36 employees and $7.546 million in annual sales. *See* Dun & Bradstreet, Business Directory, *Lasalle Management Co*., https://www.dandb.com/businessdirectory/lasallemanagementcompanyl.l.c.-ruston-la-34069014.html (last visited Sept. 6, 2023)

the nonresident defendant must be subject to the state's long arm statute. *See Cable/Home Comm'n Corp., v. Network Prods.*, 902 F.2d 829, 855 (11th Cir. 1990); *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 919–20 (11th Cir. 1989). Georgia's long-arm statute "confers *in personam* jurisdiction to the maximum extent allowed by the due process clause of the federal Constitution." *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994); *see* O.C.G.A. § 9–10–91. Once a basis for the assertion of personal jurisdiction exists under Georgia's statute, courts will next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *Cable/Home Commc'n Corp.,* 902 F.2d at 855; *Alexander Proudfoot Co.,* 877 F.2d at 919. "[W]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010); *see Meyn Am., LLC v. Tarheel Distrib., Inc.*, 36 F. Supp. 3d 1395, 1402 (M.D. Ga. 2014).

## V.  ARGUMENT

Both Moving Defendants are subject to personal jurisdiction under Georgia's long-arm statute and have sufficient minimum contacts with Georgia such that jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment.

### A.  GEORGIA'S LONG-ARM STATUTE AUTHORIZES PERSONAL JURISDICTION OVER LASALLE MANAGEMENT AND LASALLE CORRECTIONS

Georgia's long arm statute provides, in relevant part, that a court may exercise personal jurisdiction over a non-resident that (1) transacts business within the state, or (2) owns, uses, or possesses any real property situated within the state. *See* O.C.G.A. § 9–10–91. The exercise of personal jurisdiction requires a court to find at least one prong of Georgia's long arm statute, but not necessarily

all prongs, satisfied. *See Diamond Crystal*, 593 F.3d at 1260 (citing *Rudo v. Stubbs,* 472 S.E.2d 515, 516 (Ga. Ct, App. 1996)). Contrary to Defendants' assertions, Plaintiffs' FAC implicates both of these prongs. *Cf.* Memo. at 13. Here, the Moving Defendants are subject to Georgia's long-arm statute as they transact business within Georgia *and* own, use, or possess real property within the state—namely, the Irwin facility.

The first subsection of Georgia's long-arm statute is literally construed by the Georgia Supreme Court, and therefore "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State." *Diamond Crystal*, 593 F.3d at 1261 (citing *Innovative Clinical & Consulting Servs., LLC v. First Nat'l. Bank*, 620 S.E.2d 352, 355 (Ga. 2005)). "Transacting business" requires that the "'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia.]'" *Diamond Crystal*, 593 F.3d at 1260 (citing *Aero Toy Store, LLC v. Grieves,* 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)); *see also Amerireach.com, LLC v. Walker*, 719 S.E.2d 489,496 (Ga. 2011) (subsection (1) of the long-arm statute has "no explicit legislative limiting conditions" and courts must give "appropriate breadth" to the "'transacting any business' language"). To determine whether a nonresident has transacted any business within Georgia, courts will "examine all of a nonresident's tangible and intangible conduct," even if occurring while the defendant is physically outside of Georgia and does not physically enter the state. *See Diamond Crystal*, 593 F.3d at 1264. For example, a nonresident's mail, telephone calls, and other "intangible" acts, though occurring while the defendant is physically outside the state, should be considered. *Id*.

Here, both Moving Defendants have unquestionably "purposefully done some act or consummated some transaction" in Georgia. *Id*. at 1260. The Moving Defendants' own public assertions, many of which are provided under oath, evidence that they own and operate Irwin, including

14

their employment of Irwin facility staff.[31] Moreover, as the OIG Report confirms, the federal government's IGSA for Irwin, a Georgian facility, contracts with LaSalle Corrections, who is paid for the detention of immigrants in Georgia.[32] *See Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1314 (N.D. Ga. 2014) (holding a well-recognized way for nonresidents to transact business under Georgia law is to negotiate the terms of an agreement within the state); FAC ¶¶ 8, 28, 34. Moreover, as alleged in the FAC, Plaintiffs were forced to purchase necessary items from the Irwin commissary, which sales profited Defendants. *Id.* ¶¶ 73-75; *see Amerireach.com, LLC*, 719 S.E.2d at 269-270 (founding members of LLC who sold nutritional supplements online to plaintiff, who was located in Georgia, had "transacted business" in Georgia "resulting in the unlawful conduct set forth" in the complaint").

The Moving Defendants' "intangible conduct" related to Irwin also plays a material role in the operation of the facility, despite occurring outside of Georgia. The Moving Defendants' ***admit*** that LaSalle Management performs virtual accounting services for LaSalle Southeast. *See* Motion ¶¶ 8-9; Memo. at 8, 9, 11. The Moving Defendants also advertise on their website for employment opportunities at all LaSalle facilities, which presumably has resulted in the hiring of Irwin facility employees, administers the payroll for Irwin facility employees, and set the policy and procedures for the Irwin facility. *See Aero Toy Store, LLC v. Grieves*, 631 S.E.2d 734,740 (Ga. App. 2006) (finding defendant "transacted business" in Georgia for purposes of the state's long arm statute based on defendant's operation of an "interactive website through which it has reached out to, and done business with, persons in Georgia."); *cf. Jordan Outdoor Enterp., Ltd. v. That 70's Store, LLC*, 819 F.Supp.2d 1338, 1342-43 (finding no personal jurisdiction where plaintiffs could point to no consistent course of

---

[31] *See* Paulk Deposition, *supra* n. 15, at 8:12-9:15, 14:12-17:25, 48:12-21, 84:16-85:5.
[32] OIG Report, *supra* n.16, at 3-4.

conduct "that would amount to the traditional transaction of business in Georgia" as defendants did "not correspond via email, mail, or telephone with Georgia residents," and finding defendants' website insufficient to establish jurisdiction where the website "failed to generate any business for Defendants in Georgia[,]" "did not target Georgia residents[,]" "did not sell any products to Georgia residents[,]" and "did not ship any products to Georgia."). While "ownership of a subsidiary by an out-of-state parent corporation *without more* is insufficient to obtain jurisdiction of the parent corporation," here, Plaintiffs allege more. *See Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-0222-HLM, 2016 WL 9450454, at *7 (N.D. Ga. Mar. 3, 2016) (internal quotations and citations omitted). As discussed *supra* (*see* Section III), LaSalle Management and LaSalle Corrections are inextricably intertwined with each other and the remaining Defendants named in this action as collectively owning, managing, and operating the Irwin facility in Georgia, including the Moving Defendants' own admissions that they "monitor[] general operations at all [LaSalle] facilities."[33]

The Moving Defendants also satisfy the second prong of Georgia's long-arm statute as they own, use, or possess real property in Georgia. *See* O.C.G.A. § 9–10–91. The OIG Report states "[Irwin] is owned by LaSalle Corrections and operates under an [IGSA] as an ICE detention facility."[34] *Cf. Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1294 (11th Cir. 2000) (finding no personal jurisdiction where the record did not show that defendant maintained offices or employees, or owned property in the U.S.); *but see Gregory v. Preferred Fin. Sols.*, No. 5:11-CV-422 MTT, 2013 WL 5725991, at *7 (M.D. Ga. Oct. 21, 2013) (finding, even where defendants did not own property in Georgia, there was sufficient business transacted in Georgia to exercise jurisdiction). Georgia's long arm statute is satisfied; the Moving Defendants' arguments to the contrary should be rejected.

---

[33] *See* LaSalle Website – About Us: Corporate Management, *supra* at n. 13.

[34] OIG Report, *supra* n. 16, at 3.

B.    THIS COURT'S EXERCISE OF SPECIFIC JURISDICTION OVER THE MOVING DEFENDANTS DOES NOT VIOLATE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

A court may exercise personal jurisdiction over a nonresident defendant if "both prongs of the [jurisdiction] analysis are satisfied." *Madara*, 916 F.2d at 1514; *see Cable/Home Commc'n Corp.* 902 F.2d at 855 (delineating the two-part jurisdictional analysis). Once the exercise of jurisdiction is established through Georgia's long-arm statute, a court "may exercise jurisdiction over only those who have established certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal*, 593 F.3d at 1267. However, even when not subject to general jurisdiction, a nonresident defendant may be subject to specific jurisdiction in a state when: (1) it has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *see Best v. Raley Recs.*, No. 7:06-CV-23, 2006 WL 1890204, at *3 (M.D. Ga. July 10, 2006).

To establish "minimum contacts" with a state, a plaintiff must demonstrate the existence of three factors. *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993). First, the plaintiff's cause of action must arise out of, or relate to, the nonresident defendant's contacts with the forum state. *Id*. Second, the contacts must show that the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state. *Id.* Third, the defendant's contacts must demonstrate that the nonresident could reasonably anticipate being hauled into court in the forum. *Id*. In essence, the "availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation." *Francosteel Corp.,* 19 F.3d at 627.

Here, all three elements are satisfied. First, Plaintiffs' action arises from the Moving Defendants' operation, management, and oversight of Irwin, including pursuant to the IGSA with the

federal government to detain immigrants specifically at Irwin, which facility is located in Georgia.[35] Compl. ¶¶ 21-28; *see Diamond Crystal*, 593 F.3d at 1269 ("A contract calling for payment and delivery in the forum requires 'contact' with the forum") (citing *S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1305 (11th Cir. 2000); *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa,* 245 F. Supp. 2d 1248, 1256 (N.D. Ga. 2002) (holding first prong of minimum contacts analysis satisfied where City of Tulsa entered into a contract with law firm's Atlanta office where "the contacts that exists between Tulsa and Georgia provide the basis for this lawsuit."). As discussed, in addition to the various public representations by the Moving Defendants that they own, manage, and operate Irwin, the Moving Defendants set overarching policies and procedures for Irwin, advertises employment opportunities at Irwin on their website, employ Irwin staff and provides their income tax documents, entered into a federal contract to detain immigrants at Irwin, a Georgian detention center, and make a profit from commissary sales at the facility. *See* Section III, *supra*. Moreover, LaSalle Corrections Executive Director Rodney Cooper is personally responsible for the "general operations at all facilities"[36] and has "direction and oversight of LaSalle managed facilities in … Georgia."[37] Second, and for the same reasons, the Moving Defendants purposefully availed themselves of the privilege of conducting activities within Georgia. Third, the Moving Defendants significant contacts with Georgia through their ownership, management, and operation of Irwin evidence that they could reasonably anticipate being hauled to Georgia for litigation related to Irwin.  *See, e.g.*, *City of Tulsa,* 245 F. Supp. 2d at 1256 (holding the "continuous and extensive relationship" between Tulsa and a law firm's Atlanta office supported that "Tulsa purposefully availed itself of the privilege of doing business in Georgia").

---

[35] *See* OIG Report, *supra* n. 16, at 4 ("ICE terminated the contract **with LaSalle Corrections** effective October 7, 2021, and as of September 3, 2021, ICE no longer housed detainees at [Irwin.]") (emphasis added).

[36] *See* LaSalle Website – About Us: Corporate Management, *supra* n. 13.

[37] *See* Cooper LinkedIn, *supra* n. 21.

Once a plaintiff has established that the nonresident defendant has the requisite minimum contacts with the forum state, the court must consider these contacts in light of other factors to determine whether the assertion of jurisdiction "would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476. "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 477. Courts in Georgia have found that Georgia has a "significant interest in 'providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'" *City of Tulsa*, 245 F. Supp. 2d at 1259 (citing *Burger King Corp.*,471 U.S. at 473). Here, Plaintiffs are Georgia residents who were detained at the Irwin facility. FAC ¶¶ 17-20. The Moving Defendants should thus have reasonably and foreseeably expected that their significant contacts with Georgia, which caused injuries in Georgia to Plaintiffs who are Georgian residents, would subject them to jurisdiction in the state to redress same. The Moving Defendants' significant contacts with Georgia do not violate notions of fair play or justice. "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the defendant." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 107 (1987).

### C.    TO THE EXTENT THE COURT DETERMINES THERE ARE MATERIAL CONFLICTS AS TO THE FACTS ASSERTED BY THE PARTIES, IT SHOULD PERMIT JURISDICTIONAL DISCOVERY AND HOLD AN EVIDENTIARY HEARING

"The Eleventh Circuit 'long has recognized a qualified right to jurisdictional discovery.'" *Segment Consul. Mgmt., Ltd. v. Bliss Nutraceticals,* 1:20-cv-1837-TWT, *LLC*, 2022 WL 252309, at *11 (N.D. Ga. Jan. 27, 2022) (internal quotation omitted); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729-31 (11th Cir. 1982). In the alternative, should the Court determine there are material conflicts as to the facts asserted by the parties, Plaintiffs respectfully seek jurisdictional discovery with regard to the factual assertions concerning jurisdiction in the Motion and an evidentiary hearing

19

regarding same. *See Eaton*, 692 F.2d at 729 ("It is now clear that federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."). As the LaSalle enterprise is a ***privately-held*** corrections company, there is limited public information available.[38] Thus, jurisdictional discovery should be permitted regarding the Moving Defendants assertions in the Motion, their relationship to Irwin and one another, their employment of Irwin facility staff and management of the Irwin facility, their federal and other contracts related to Irwin, and their profit from the Irwin commissary.

## VI.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendants' Motion should be denied.  To the extent the Court finds any deficiencies in the pleadings, Plaintiffs respectfully seek leave to amend the Complaint, or alternatively, respectfully seek jurisdictional discovery and an evidentiary hearing regarding same.

Dated: September 8, 2023                                     Respectfully submitted,

**GRANT & EISENHOFER P.A.**

*/s/ Barbara J. Hart*
Barbara J. Hart (*Pro Hac Vice*)
Irene R. Lax (*Pro Hac Vice*)
485 Lexington Ave. 29th Floor
New York, NY 10017
Phone (646) 722-8500
bhart@gelaw.com
kfisch@gelaw.com
ilax@gelaw.com

**GRANT & EISENHOFER P.A.**
Samuel Mukiibi (*Pro Hac Vice Forthcoming*)
123 Justison Street
Wilmington, Delaware 19801
Phone (302) 622-7500
smukiibi@gelaw.com
pmehta@gelaw.com

---

[38] Paulk Deposition, *supra* n.15, at 75:18-22; Hearn Testimony, *supra* n. 4, p. 1.

**MITCHELL SHAPIRO GREENAMYRE & FUNT LLP**
Zachary Greenamyre (GA Bar No. 293002)
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
Phone (404) 812-4747
zack@mitchellshapiro.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

3

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2023, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which will send Notice of Electronic filing to all counsel of record.

*/s/ Barbara J. Hart*
Barbara J. Hart

Dated: September 8, 2023